# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ASBURY A. PARKER,             *

    Plaintiff              *

    v.                    *        CIVIL NO. JKB-15-3652

AMERICAN BROKERS CONDUIT, *et al.*,  *

    Defendants           *

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Asbury A. Parker ("Plaintiff") brought a *pro se* action against American Brokers Conduit ("ABC"); Acclaim Title and Escrow ("Acclaim"); Mortgage Electronic Registration Systems, Inc. ("MERS"); CitiMortgage, Inc. ("CitiMortgage"); the Federal National Mortgage Association ("Fannie Mae"); Seterus, Inc. ("Seterus"); and "Does 1 to 250 inclusively" (collectively, "Defendants").  In his Complaint, Plaintiff presents a host of federal and state claims relating to a mortgage-loan transaction and a state-court foreclosure action to which he is a party.

Now pending before the Court are two motions to dismiss:  a motion by CitiMortgage, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 5); and a motion by Fannie Mae, Seterus, and MERS (the "Fannie Mae Defendants"), filed pursuant to Rules 12(b)(5) and 12(b)(6) (ECF No. 7).  Although the Clerk notified Plaintiff of these pending motions through letters dispatched to the mailing address listed on his Complaint (ECF Nos. 6 & 11), *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam),[1] Plaintiff did not file a response in opposition within the period prescribed by Local Rule 105.2(a) (D. Md. 2014).

---

[1] Though *Roseboro* explicitly requires notice to *pro se* litigants in advance of summary judgment, courts in this District have construed the requirement as applying to motions to dismiss. *E.g.*, *Wilson v. Gray*, Civ. No. DKC 15-0798, 2016 WL 337530, at *2 (D. Md. Jan. 28, 2016).

Nevertheless, the Court has carefully reviewed the allegations in Plaintiff's Complaint and the arguments presented in the pending motions. For the reasons explained below, those motions will be GRANTED, and Plaintiff's case will be DISMISSED.[2]

## I.   Overview[3]

Plaintiff alleges that he is the "owner in possession" of certain real property located at 1015 Madison Court, Annapolis, Maryland, 21403 ("the Property"). (ECF No. 1 ¶ 1.) In August 2006, Plaintiff obtained a mortgage loan from ABC in the amount of $170,000, memorialized in a promissory note ("the Note") and secured by a deed of trust ("the Deed") encumbering the Property. (*Id.* ¶ 29.)[4]

Plaintiff's Complaint is not a model of clarity. However, his central theory seems to involve a challenge to the chain of title associated with the Note. Specifically, Plaintiff alleges that his "loan was securitized, with a Note not being properly transferred to Citi[M]ortgage"; that CitiMortgage made a subsequent assignment to Fannie Mae; and that these assignments were defective, such that "Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of [Plaintiff's] original . . . Note and Deed . . . resulting in imperfect security interests and claims." (*Id.* ¶¶ 24, 30, 32.)[5]

---

[2] The Court reaches this conclusion on the papers; it need not hold a hearing in this matter. *See* Local Rule 105.6 (D. Md. 2014).

[3] Because CitiMortgage and the Fannie Mae Defendants moved to dismiss for failure to state a claim, the facts are recited here as alleged by Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[4] The Deed designates MERS as nominee for ABC and its successors and assigns. (ECF No. 1–1 at 2.)

[5] Plaintiff vaguely alludes to possible procedural defects associated with the assignments. With respect to the transfer from ABC to CitiMortgage, Plaintiff avers that "[n]either power of attorney nor certificate of authority was filed." (ECF No. 1 ¶ 30.) However, Plaintiff proffers no explanation for why he believes such instruments should have been filed or where they should have been filed, and the Court suspects Plaintiff misunderstands the nature of the ABC–CitiMortgage transaction (*i.e.*, an assignment executed via MERS as ABC's nominee). With respect to the transfer from CitiMortgage to Fannie Mae, Plaintiff observes that the Assignment of Deed of Trust was notarized one day after it was executed. (*Id.* ¶ 32.) But Plaintiff cites no authority for the proposition that such a minor discrepancy affects the validity of the instrument. And in any event, under Maryland law, failures in deed formalities—including defective acknowledgements—have no legal effect unless challenged in judicial proceedings commenced within six months after recordation. Md. Code Ann., Real Prop. § 4-109(c). The assignment from CitiMortgage to Fannie Mae was recorded on February 27, 2014. (ECF No. 1–3 at 1.) Consequently, even if the

It seems that Plaintiff fell significantly behind on his mortgage payments.  On April 11, 2014, he received a Notice of Intent to Foreclose from the law firm of Cohn, Goldberg & Deutsch, LLC ("Cohn Goldberg"), a nonparty and agent for Seterus, which is itself a loan servicer acting on behalf of Fannie Mae.  (*See* ECF No. 1–5.)  Thereafter, Plaintiff dispatched letters captioned "NOTICE OF CLAIM DISPUTE" to Cohn Goldberg and Seterus, demanding proof of the recipients' rights to enforce the Note.  (*See* ECF Nos. 1–8 & 1–9.)  Apparently dissatisfied with whatever responses he may have received, Plaintiff filed suit on November 30, 2015,[6] asserting "lack of standing" and a right to declaratory relief (Counts I & VII); fraud in the concealment and in the inducement (Counts II–III); intentional infliction of emotional distress ("IIED") (Count IV); slander of title and the right to quiet title (Counts V–VI); statutory violations under Maryland and federal law (Counts VIII & XI–XII); breach of contract and of fiduciary duty (Counts IX–X); and a claim for rescission (Count XIII).  Plaintiff also sought emergency injunctive relief (ostensibly to halt the state foreclosure proceedings), which request the Court denied in a December 1, 2015, Order (ECF No. 2).[7]

---

deed acknowledgement was defective, such defect would have no bearing in the present litigation, which commenced nearly two years later.

     Plaintiff also surmises that his loan was governed by a pooling and servicing agreement ("PSA") that may have affected the circumstances under which the loan could be securitized.  (ECF No. 1 ¶ 19.)  Throughout his Complaint, Plaintiff seems to suggest that the assignments at issue are void for violating the PSA.  Plaintiff proffers few details about this purported PSA; try as the Court might, it can locate no reference to the PSA in either the Note or the Deed, both of which instruments are appended to Plaintiff's Complaint and incorporated therein.  Regardless, Plaintiff's PSA theory is one that courts have routinely rejected as meritless.  *See, e.g., Bell v. Clarke*, Civ. No. TDC-15-1621, 2016 WL 1045959, at *2 (D. Md. Mar. 16, 2016) ("[M]ortgagors generally lack standing to attack transfers of their mortgages through assignments and PSAs to which they are not parties."); *Stanworth v. Bank of Am., N.A.* (*In re Stanworth*), 543 B.R. 760, 773 n.19 (Bankr. E.D. Va. 2016) ("Although the Fourth Circuit is not among the circuits that have addressed the issue, district courts within the Fourth Circuit have . . . concluded that homeowners lack standing to enforce terms of a pooling and servicing agreement because they are neither parties to nor intended third party beneficiaries of these contracts.") (collecting cases).

[6] For the sake of clarity and to avoid unnecessary redundancy, the Court has grouped certain related counts together rather than addressing each sequentially.

[7] The movants appended as exhibits to their motions to dismiss copies of a transcript from the Maryland Judiciary Case Search system (Docket No. 02-C-14-190378, Circuit Court for Anne Arundel County), which shows that the Property was sold at a foreclosure sale on December 7, 2015.  (ECF Nos. 5–6 at 6 & 7–8 at 8.)  The updated online docket shows that the circuit court ratified the foreclosure sale on February 11, 2016.

CitiMortgage moved to dismiss on December 24, 2015 (ECF No. 5), and the Fannie Mae Defendants moved to dismiss on February 5, 2016 (ECF No. 7).[8]  Plaintiff failed to timely respond to either motion, and the motions are therefore ripe for decision.

## II.   Failure to Litigate

Because Plaintiff failed to oppose either of the pending motions to dismiss, he has effectively conceded the dispositive arguments presented in those motions, and for that reason alone his Complaint is susceptible to dismissal.  *See White v. Wal–Mart Stores, Inc.*, Civ. No. ELH-14-00031, 2014 WL 1369609, at *2 (D. Md. Apr. 4, 2014) ("When a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted' in the motion." (alterations in original) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004))).  Of course, the Court "need not grant a motion to dismiss based on the failure to file a timely opposition when the motion is plainly lacking in merit."  *United States v. Sasscer*, No. Y-97-3026, 2000 WL 1479154, at *2 n.6 (D. Md. Aug. 25, 2000).   But as will become apparent, it is Plaintiff's Complaint rather than the pending motions that is "plainly lacking in merit," and dismissal is the appropriate remedy.

---

[8] On December 2, 2015, the Court entered a Service Order advising Plaintiff that he must (1) properly serve a summons and a copy of the Complaint on each Defendant and (2) promptly notify the Court, through affidavit or certified mail receipt, upon completion of service.  (ECF No. 3 at 1.)  To date, Plaintiff has filed no such proof of service.  Moreover, in a declaration appended to the Fannie Mae Defendants' Motion to Dismiss, defense attorney Marc A. Marinaccio averred that each of the Fannie Mae Defendants "confirmed that they received a copy of the Complaint, without summons, by regular mail."  (ECF No. 7–2 at 2.)  Because Plaintiff has apparently failed to comply with the Court's Service Order and Rule 4 of the Federal Rules of Civil Procedure; because the Fannie Mae Defendants raised this deficiency in their motion, pursuant to Rule 12(b)(5); and because Plaintiff failed to oppose that motion and therefore concedes the deficiency, the Court could dismiss Plaintiff's Complaint against the Fannie Mae Defendants on service grounds alone.  *See O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) ("A motion to dismiss for insufficient service of process is permitted by Federal Rule 12(b)(5).  Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4.").  However, because the Court has determined that Plaintiff's Complaint fails to state a claim for relief as against *any* of the named Defendants, the Court declines to dismiss the action on pure procedural grounds and will instead resolve the matter on the merits.

### III.   *Analysis of the Complaint*

#### A.   *Standard and Scope of Review*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]"  *Twombly*, 550 U.S. at 556.  Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).  A plaintiff filing *pro se* is held to a "less stringent standard[]" than is a lawyer, and the Court must construe *pro se* claims liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, even a *pro se* complaint must meet a minimum threshold of plausibility.  *Letke v. Wells Fargo Home Mortg., Inc.*, Civ. No. RDB-12-3799, 2013 WL 6207836, at *2 (D. Md. Nov. 27, 2013).

In general, the Court does not consider extrinsic evidence at the Rule 12(b)(6) stage—but there are important exceptions to this general principle.  First, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 n.4 (D. Md. 2009) ("A district court may take judicial notice of 'matters of public record' without converting a Rule 12(b)(6) motion into a motion for

summary judgment." (citation omitted)).   Second, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity.'"   *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations added and in original) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

### B.   *"Lack of Standing"*[9] *and Declaratory Relief (Counts I & VII)*

In Count I, Plaintiff alleges that Defendants "do not have the right to foreclose on the Property because Defendants . . . failed to perfect any security interest in the Property," ostensibly because the assignors failed to endorse and transfer the Note to the assignees and because any attempt to assign the Deed apart from the Note is a "nullity."   (ECF No. 1 at 11-12.)[10]   In related Count VII, Plaintiff requests a "judicial determination of the rights, obligations and interest of the parties with regard to the Property" and a judgment that he owns the Property in fee simple.   (*Id.* at 21.)   Counts I and VII fail as a matter of both law and fact.

---

[9] The Court notes that "lack of standing" is not an affirmative cause of action but is, presumably, a defense that Plaintiff could have raised in the state foreclosure proceedings.   *See Heaney v. Quicken Loans, Inc.*, Civ. No. JFM-14-1002, 2014 WL 4686682, at *3 (D. Md. Sept. 16, 2014) ("[C]ourts in this district have repeatedly concluded that a claim for lack of standing is not viable where a defendant has not sought affirmative relief."). For purposes of this analysis, the Court construes Count I as an iteration of Plaintiff's request for declaratory and injunctive relief.

[10] Plaintiff adds that "the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest." (ECF No. 1 ¶ 47.)   Plaintiff is of course correct that any former secured parties that relinquished their interest in the Property would lack standing to foreclose upon it.   But there is no indication in Docket No. 02-C-14-190378 that any party other than Fannie Mae or its agents has initiated or joined such a foreclosure action.

Moreover, to the extent that Plaintiff would invite the Court to interfere with the state foreclosure proceedings, such interference would presumably violate the Anti-Injunction Act, 28 U.S.C. § 2283, which bars the Court from enjoining state proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."   *Cf. Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. Feb. 3, 2015) ("Significantly, where the Anti–Injunction Act bars an injunction it also bars the issuance of a declaratory judgment that would have the same effect as an injunction." (internal quotation marks and citations omitted)).   And to the extent that the Circuit Court for Anne Arundel County has ruled on matters germane to Plaintiff's federal case, principles of comity and *res judicata* would prohibit the Court from second-guessing or reevaluating those state-court rulings.   *See Pitts v. Mozilo*, Civ. No. GJH-15-451, 2015 WL 4770941, at *6 (D. Md. Aug. 11, 2015) ("[B]ecause the Circuit Court permitted foreclosure over Plaintiffs' objection and ratified the sale, *res judicata* would be an additional bar to Plaintiffs' request for declaratory relief that Defendants did not have the right to foreclosure and request for rescission of the loan.").

As to the law, Courts in this Circuit and elsewhere have routinely rejected challenges to loan securitization and assignments executed through the MERS system; courts have likewise rejected the note/deed separation theory that Plaintiff seems to advance here. *See, e.g.*, *Quattlebaum v. Bank of Am., N.A.*, Civ. No. TDC-14-2688, 2015 WL 1085707, at *5 (D. Md. Mar. 10, 2015) ("In Maryland . . . the right to enforce the deed of trust automatically follows the note, making the two inseparable. . . . Courts . . . have therefore repeatedly and appropriately rejected the 'separation theory' as a basis for invalidating mortgages."); *Reed v. PNC Mortg.*, Civ. No. AW-13-1536, 2013 WL 3364372, at *3 (D. Md. July 2, 2013) ("Even assuming that his loan was securitized, Plaintiff has presented no basis for the Court to declare the deed of trust invalid or unenforceable."); *Unthank v. Freedom Mortg. Corp.*, Civ. No. JFM-13-100, 2013 U.S. Dist. LEXIS 41316, at *2 (D. Md. Mar. 25, 2013) ("The law is clear . . . that defendant[s] were entitled to transfer and/or securitize the mortgage note at issue in this case."), *aff'd*, 539 F. App'x 132 (4th Cir. 2013) (per curiam); *Suss v. JP Morgan Chase Bank, N.A.*, Civ. No. WMN-09-1627, 2010 WL 2733097, at *5 (D. Md. July 9, 2010) ("[C]ourts that have considered the issue have found that the [MERS] system of recordation is proper and assignments made through that system are valid."); *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. May 13, 2010) ("[A] deed of trust continues to secure the holder of a note and nothing in the . . . securitization of a note renders it unsecured."), *aff'd*, 442 F. App'x 816 (4th Cir. 2011) (per curiam).

As to the facts, the Deed at issue here specifically authorizes assignment and sale: "The Note or a partial interest in the Note (together with [the Deed]) can be sold one or more times without prior notice to Borrower." (ECF No. 1–1 at 11.) And perhaps most fatal to Plaintiff's argument, the instruments of assignment—publicly recorded documents that are properly within the ambit of the Court's review, even at the Rule 12(b)(6) stage—evince an unbroken chain of

title from ABC (via MERS) to CitiMortgage to Fannie Mae.  (*See* ECF Nos. 5–4 & 5–5.) Plaintiff's contentions under Counts I and VII are legally and factually meritless, and those counts must therefore be DISMISSED.

### C.   *Fraud in the Concealment and in the Inducement (Counts II–III)*

In Count II, Plaintiff alleges that Defendants fraudulently "concealed the fact that the [Loan] [was] securitized as well as the terms of the Securitization Agreements." (ECF No. 1 at 14.)  In Count III, Plaintiff adds that Defendants "intentionally misrepresented to Plaintiff [that] Defendants were entitled to exercise the power of [s]ale provision contained in the Deed" and that the foreclosure action pending in state court is therefore fraudulent.  (*Id.* at 15.)  Plaintiff's fraud theories fail for several reasons.

First, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, fraud claims must be pleaded with particularity.  "Failure to comply with the pleading requirements of Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6)."  *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 504 (D. Md. 2002).  Plaintiff's "threadbare, conclusory allegations" in his Complaint do not meet the heightened standard of Rule 9(b), as he "does not include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Ramirez v. Wells Fargo Bank, N.A.*, Civ. No. PWG-14-3819, 2015 WL 5052787, at *3 (D. Md. Aug. 25, 2015) (alteration in original) (internal quotation marks and citation omitted).

Moreover, even if the Court granted Plaintiff an opportunity to expound on his threadbare fraud claims, such claims would still fail for the reasons discussed in Part III.B, *supra*.  The Deed expressly authorizes assignment, so Plaintiff cannot credibly contend that he was deceived about

the possibility of securitization.[11]  And because the publicly recorded instruments of assignment show an unbroken chain of title leading to Fannie Mae, Plaintiff's notion that the parties to the pending state proceeding (Cohn Goldberg's attorneys acting on behalf of Seterus and, ultimately, Fannie Mae) have asserted a fraudulent foreclosure claim holds no water.

Finally, even if Plaintiff could theoretically cobble together a justiciable fraud claim based on information that was withheld at the time of the loan transaction, such a claim would presumably be time-barred.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues . . . .").[12]  For these several reasons, Counts II–III must be DISMISSED.

### D.   IIED (*Count IV*)

In Count IV, Plaintiff accuses Defendants of engaging in "outrageous or reckless conduct," supposedly because they "misrepresented to the Plaintiff" that they were "entitled to exercise the power of sale provision contained in the Deed."  (ECF No. 1 at 16.)  Aside from the factual inaccuracy of Plaintiff's assertion, his pleading falls far short of the requirements to recover for IIED under Maryland law.  *See Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992) (explaining that conduct actionable as IIED must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977))); *see also Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 614 A.2d 1021, 1034 (Md. Ct. Spec. App. 1992) ("Since the *Harris*

---

[11] Securitization is, after all, at bottom a sophisticated mechanism for mortgage assignment, albeit to spread risk and to facilitate investment.  *See Anderson v. Burson*, 35 A.3d 452, 455 (Md. 2011) ("Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. The investment bank bundles together the multitude of mortgages it purchased into a 'special purpose vehicle,' usually in the form of a trust, and sells the income rights to other investors." (footnote and citation omitted)).

[12] Throughout this Memorandum, to the extent the Court's analysis turns in part on statutes of limitations, the Court recognizes that litigants may qualify under certain circumstances for equitable tolling of the applicable limitations periods.  However, at no point in his Complaint does Plaintiff make any effort to (1) justify his untimely claims or (2) explain why a tolling principle should apply on the facts of his case.  Consequently, the Court declines to consider the hypothetical application of any such principle.

decision, Maryland courts have limited recovery to the most extreme and unusual circumstances."); *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064-65 (Md. Ct. Spec. App. 1986) ("To sustain an action for [IIED] . . . one must suffer an emotional response so acute that no reasonable person could be expected to endure it. . . . In developing the tort . . . recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves."). Rather than pleading actionably extreme misconduct and specific manifestations of distress flowing from that misconduct, Plaintiff has pleaded run-of-the-mill borrower/lender claims and conclusory damages. Count IV must be DISMISSED.

### E.    Slander of Title and Request to Quiet Title (Counts V–VI)

In Count V, Plaintiff alleges that Defendants "disparaged Plaintiff's exclusive valid title" through the preparation and publication of certain documents—a Notice of Intent to Foreclose, a Notice of Trustees' Sale, and an Appointment of Substitute Trustees. (ECF No. 1 at 18.)[13] In Count VI, Plaintiff adds that Defendants have no rightful claim to the Property, and he seeks a "judicial declaration" that title to the Property is vested in him alone. (*Id.* at 20.) Plaintiff is entitled to no such relief.

In an action for slander of title, the plaintiff must "establish that the defendant, with malice, published a known falsity to a third party that caused special damages." *Gibbons v. Bank of Am. Corp.*, Civ. No. JFM-08-3511, 2012 WL 94569, at *10 (D. Md. Jan. 11, 2012). Plaintiff here cannot establish that Defendants published a "known falsity" because (1) the Deed expressly authorizes foreclosure actions and (2) Plaintiff never disputes that his mortgage payments were in arrears—a fact reflected in the Notice of Intent to Foreclose (which document Plaintiff *himself* produced for the Court's review). (*See* ECF No. 1–5 at 2.) *Cf. Simmons v. Bank of Am., N.A.*, Civ. No. PJM 13-0733, 2014 WL 509386, at *5 (D. Md. Feb. 6, 2014)

---

[13] It is not clear why Plaintiff believes that an Appointment of Substitute Trustees slanders his title.

("Dominating everything else . . . is the fact that the Deed of Trust gives the mortgagee or assignee the right to foreclose on the Property.  As a result, any Notice of Default or Notice of Foreclosure . . . could hardly be false.").[14]

In an action to quiet title, Maryland law requires that no proceedings be "pending to enforce or test the title or claims thereto." *Roberson v. Ginnie Mae REMIC Tr. 2010 H01*, 973 F. Supp. 2d 585, 590 (D. Md. Sept. 25, 2013); *see also* Md. Code Ann., Real Prop. § 14-108(a) ("Any person in actual peaceable possession of property . . . when his title to the property is denied or disputed . . . if an action at law or proceeding in equity is not pending to enforce or test the validity of the title . . . may maintain a suit in equity . . . to quiet or remove any cloud from the title, or determine any adverse claim."); *Ramirez*, 2015 WL 5052787, at *5 (dismissing quiet-title claim where foreclosure action was pending).  Here, there is no question that a foreclosure action remains pending in state court:  in fact, it was that state action that prompted Plaintiff's Complaint.  So even if Plaintiff's quiet-title request had merit, the Court would lack jurisdiction to consider it.

Counts V and VI will be DISMISSED.

**F.    *Statutory Violations (Counts VIII & XI–XII)***

In Count VIII, Plaintiff accuses Defendants (or perhaps just ABC and Seterus) of noncompliance with unspecified disclosure requirements enumerated in "Maryland Civil Code Ann.7-301-321" [*sic*], which the Court takes as a reference to Md. Code Ann., Bus. Occ. & Prof. §§ 17-301 *et seq.*  Plaintiff adds that Defendants violated unspecified disclosure requirements of

---

[14] Moreover, while Plaintiff vaguely references "expenses" that he incurred "in order to clear title," along with a laundry list of conclusory emotional harms, he does not allege sufficient factual content from which the Court can plausibly infer that Defendants' publications caused him special damages, *i.e.*, damages that "result in a pecuniary loss directly or immediately from the conduct of third persons." *Rounds v. Md.–Nat'l Capital Park & Planning Comm'n*, 109 A.3d 639, 663-64 (Md. 2015) (quoting *Rite Aid Corp. v. Lake Shore Inv'rs*, 471 A.2d 735, 742 (Md. 1984)).

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; and the Truth in Lending Act

("TILA"), 15 U.S.C. §§ 1601 *et seq.*   However, Plaintiff neither cites particular provisions of

these lengthy statutes nor pleads factual content from which Defendants might infer which

disclosure requirements they have purportedly violated.   Count VIII falls short of the

notice-pleading standard codified in Rule 8(a) of the Federal Rules of Civil Procedure and must

therefore be DISMISSED.   *See Freckleton v. Target Corp.*, 81 F. Supp. 3d 473, 479 (D. Md.

2015) ("Although Rule 8's notice-pleading requirements are 'not onerous,' the plaintiff must

allege facts that support each element of the claim advanced.   These facts must be sufficient to

'state a claim to relief that is plausible on its face.'" (citations omitted)).[15]

In Count XI, Plaintiff alleges that ABC[16] violated a provision of the Home Ownership

and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639(h).   That section provides that "[a]

creditor shall not engage in a pattern or practice of extending credit to consumers under [certain]

mortgages . . . without regard to the consumers' repayment ability."   Assuming purely *arguendo*

---

[15] Plaintiff appended as Exhibit B to his Complaint a correspondence that he apparently mailed to CitiMortgage on October 7, 2013.   The correspondence is captioned as a "R.E.S.P.A. QUALIFIED WRITTEN REQUEST [("QWR")]."   (ECF No. 1–2.)   Elsewhere in his Complaint, Plaintiff alleges, somewhat in passing, that he initiated a "series" of QWRs to CitiMortgage and that a "full and proper response was never offered."   (ECF No. 1 ¶ 31.) Perhaps, then, the RESPA violation that Plaintiff vaguely asserts in Count VIII relates to CitiMortgage's alleged failure to properly answer his correspondence.

However, upon reviewing the October 7, 2013, letter, the Court has concluded that it does not constitute a QWR within the meaning of RESPA.   QWRs are correspondences that raise questions about loan servicing or purported account errors, *see* 12 U.S.C. § 2605(e)(1)(B)—but Plaintiff's October 7, 2013, letter instead challenges the existence of a lawful debt and demands that CitiMortgage produce a plethora of documents for Plaintiff's inspection.   Such demands fall outside the scope of RESPA.   *See Minson v. CitiMortgage, Inc.*, Civ. No. DKC 12-2233, 2013 WL 2383658, at *4 (D. Md. May 29, 2013) ("In determining whether a given request constitutes a QWR, courts have drawn a distinction between communications related to the servicing of the loan, which are covered under RESPA, and those challenging the validity of a loan, which are not."); *Dides v. Ocwen Loan Servicing, LLC*, Civ. No. WMN-12-2989, 2013 WL 2285371, at *2 (D. Md. May 21, 2013) ("[T]he permissible scope of [QWRs] under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest.   There is no requirement that servicers provide 'original documents of any transfers.'" (citations omitted)); *Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW (VBKx), 2012 WL 94355, at *4 (C.D. Cal. Jan. 5, 2012) ("[An] all[-]encompassing request for documents and records [is] not the type of information RESPA contemplates.").

[16] In the caption to Count XI, Plaintiff references "DEFENDANTS AND DOES 1 TO 250, INCLUSIVE."   (ECF No. 1 at 25.)   However, it appears from the substance of the count that his allegations are directed at ABC.

that ABC violated the HOEPA when it originated Plaintiff's loan in August 2006, Plaintiff's HOEPA claim is time-barred and will accordingly be DISMISSED.  *See* 15 U.S.C. § 1640(e) ("Any action under this section with respect to any violation of section 1639 . . . may be brought in any United States district court . . . before the end of the 3-year period beginning on the date of the occurrence of the violation.").

In Count XII, Plaintiff repeats his allegation that Defendants violated unspecified provisions of the Code of Maryland and the FDCPA.  Once again, Plaintiff provides no factual content to reinforce his vague legal conclusions, and Count XII must therefore be DISMISSED.

### G.    *Breach of Contract and Breach of Fiduciary Duty (Counts IX–X)*

In Count IX, Plaintiff posits that ABC and Seterus breached their contractual duties because they "did not inform Plaintiff[] that they had a statutory duty to provide Plaintiff[] with the entire loan document[] which constituted . . . the entire Contract."  (ECF No. 1 at 23.) Seterus, of course, was not involved with the August 2006 loan transaction, and there is no indication that Seterus ever entered any kind of contractual relationship with Plaintiff.  As for ABC, even if it somehow violated some disclosure obligation, Plaintiff's breach-of-contract action is over six years out-of-time.  *See Johnson v. Bank of Am., N.A.*, Civ. No. PJM 12-3808, 2013 WL 3989104, at *2 (D. Md. Aug. 1, 2013) ("The statute of limitations for a cause of action for breach of contract is three years in Maryland[.]")  Count IX will be DISMISSED.

In Count X, Plaintiff baldly asserts that Defendants owed him a fiduciary duty to place him on notice of various disclosure requirements and to supply him with "facts" from which he could determine whether he should purchase the Property.  Plaintiff alleges that Defendants breached their purported duty on August 25, 2006.  (ECF No. 1 at 24.)  Once again, Plaintiff has pleaded himself out of an untimely claim.  *See Comi v. Int'l Longshoremen's Ass'n, Local No.*

*333*, Civ. No. RDB-06-2927, 2007 WL 4268945, at *7 n.6 (D. Md. Nov. 30, 2007) ("[A] common law breach of fiduciary duty claim is governed by the Maryland [three-year] statute of limitations applicable to civil actions[.]").  And even were Plaintiff's claim timely, he has pleaded no factual content from which the Court can plausibly infer that any Defendant owed him fiduciary duties.  *Cf. Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990) ("It is pellucid that, in Maryland, the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature." (citations omitted)).  Count X will be DISMISSED.

### H.   *Rescission (Count XIII)*

In his thirteenth and final count, Plaintiff alleges that he is "entitled to rescind the loan and all accompanying loan documents."  (ECF No. 1 at 27.)  Rescission, of course, is not a cause of action *per se*; it is an equitable remedy.  *See Fernandez Cmty. Ctr., LLC v. Toshiba Bus. Sols. (USA), Inc.*, No. 5:14-CV-692-F, 2015 WL 5054463, at *2 (E.D.N.C. Aug. 26, 2015).  And since the Court has determined that Plaintiff's claims are meritless, he is entitled to no relief in these proceedings whatsoever, whether through rescission or otherwise.  Count XIII will therefore be DISMISSED.

## IV.  *Conclusion*

As noted at the outset, Plaintiff brought this action against six named Defendants (and against "Does 1 to 250 inclusively"), but two of the named Defendants—ABC and Acclaim— have not yet entered an appearance.  Given Plaintiff's defective service of process, *see supra* note 8, it is quite possible that ABC and Acclaim are entirely unaware of this litigation. However, as this Memorandum has shown, Plaintiff has failed to plead a single cognizable claim as against any Defendant.  Under such circumstances, even though ABC and Acclaim technically

14

have not moved for dismissal, principles of judicial economy and common sense counsel in favor of dismissing all claims and terminating this fruitless litigation.  *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("[A] district court may *sua sponte* dismiss a complaint for failure to state a claim. . . . Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it." (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990))); *Wallace v. Trost*, Civ. No. DKC 13-3473, 2014 WL 4388389, at *5 (D. Md. Sept. 4, 2014) (*sua sponte* dismissing claims against nonmoving defendants because plaintiff's allegations were identical— and meritless—as to movants and nonmovants alike).

For the foregoing reasons, an Order shall enter GRANTING CitiMortgage's Motion to Dismiss (ECF No. 5); GRANTING the Fannie Mae Defendants' Motion to Dismiss (ECF No. 7); DISMISSING WITH PREJUDICE all counts as against all named Defendants; and CLOSING THIS CASE.

DATED this 29th day of March, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge